UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARY B.,

                 Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

**DECISION AND ORDER**

6:21-CV-06184 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Mary B. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 8; Dkt. 10). For the reasons discussed below, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted. Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.

## BACKGROUND

Plaintiff filed her application for SSI on September 5, 2017. (Dkt. 7 at 213).[1]  In her application, Plaintiff alleged disability beginning May 3, 2015. (*Id.*).  Plaintiff's application was initially denied on January 16, 2018 (*id.* at 92), and denied upon reconsideration on July 10, 2018 (*id.* at 103).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Matthew Kuperstein on July 2, 2020. (*Id.* at 37-65; *see id.* at 110).  On September 30, 2020, the ALJ issued an unfavorable decision. (*Id.* at 16-31).  Plaintiff requested Appeals Council review, and her request was denied on December 30, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment ("Listing") in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I.      The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since September 5, 2017, the application date.  (Dkt. 7 at 22).

- 4 -

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: anxiety disorder, obsessive compulsive disorder, agoraphobia, post-traumatic stress disorder ("PTSD"), depressive disorder, and obesity. (*Id.* at 22).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 22-24). The ALJ particularly considered the criteria of Listings 12.04, 12.06, and 12.15, as well as the effects of Plaintiff's obesity pursuant to Social Security Ruling 19-2p, in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c) with the following additional limitations:

> [Plaintiff] can perform only simple, routine, and repetitive tasks with no more than occasional interaction with the general public, coworkers or supervisors. [Plaintiff] is limited to standing or walking with normal breaks for four hours out of an eight-hour workday.

(Dkt. 7 at 24).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 29). At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of tube operator, addresser, and document preparer microfilming. (*Id.* at 29-31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 31).

II.    **The ALJ's Decision is Supported by Substantial Evidence and Free From Reversible Error**

Plaintiff asks the Court to reverse the Commissioner's decision and remand for additional administrative proceedings, arguing that: (1) the assessed mental RFC is not consistent with the medical opinions and evidence of record; and (2) the RFC findings do not account for the limiting effects resulting from the combination of Plaintiff's medically determinable conditions.  (Dkt. 8-1 at 18, 28).  The Court is not persuaded by Plaintiff's arguments for the reasons discussed below.

A.    **The Specific Findings in the RFC are Supported by Substantial Evidence**

Plaintiff argues that the ALJ relied on "stale[,] incomplete" medical opinions and did not account for "restrictions in basic mental demands that may preclude competitive work" that were supported by provider opinions and notes.  (*Id.* at 18-19).  The Commissioner responds that the RFC need not directly mirror a specific medical opinion and the ALJ's decision is supported by the record as a whole.  (Dkt. 10-1 at 7-10).  The Court agrees with the Commissioner.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.*  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). The Court's review of the evidence presented to the ALJ is limited to whether the RFC findings assessed are supported by substantial evidence, which is "more than a mere scintilla" and consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citations omitted).

In determining that Plaintiff retained the capacity to engage in medium work notwithstanding her medically determinable impairments, the ALJ found persuasive the determinations of the state psychological examiners that were assessed at the initial and reconsideration stages of Plaintiff's application for benefits. (Dkt. 7 at 28). In so determining, the ALJ reasoned that the "level of ongoing residual functional capacity limitations during the period at issue are supported by and consistent with the objective medical evidence of record when they were made and has remained consistent with the medical treatment notes submitted into the medical record as a whole since they were made." (*Id.*).

- 7 -

In addition to the findings of the state agency psychologists, the ALJ considered the medical opinion evidence of record, including the opinions of Joyce Rosette, nurse practitioner ("NP"); Lyndsay Morgan, licensed master social worker ("LMSW"); Maryana Zakharcshishin, family nurse practitioner ("FNP"); and Tonya Girard, licensed marriage and family therapist ("LMFT").  (*Id.* at 24-29).  The ALJ found the medical opinion of NP Rosette to be minimally persuasive, reasoning that statements that Plaintiff made in the course of treatment in March 2020 that Plaintiff felt that therapy was effective contradicted NP Rosette's March 2018 report that Plaintiff "would be unable to complete an eight-hour workday and that she would be efficient less that 50 percent of the time."  (*Id.* at 27).  The ALJ further noted that Plaintiff's psychiatric examination exhibited largely normal functioning.  (*Id.*).  The Court finds no error in the ALJ's consideration of NP Rosette's opinion.

The ALJ also considered the Global Assessment of Functioning ("GAF") test conducted by LMSW Morgan in June 2017, on which Plaintiff scored 51.  (*Id.* at 28).  The ALJ found this test "unpersuasive" because the test "reveals only snapshots of impaired and improved behavior."  (*Id.*).  Moreover, Plaintiff's treatment records were "more probative" and showed Plaintiff's "improvement and effective response to medication and therapy." (*Id.*).  Plaintiff's GAF score of 51 indicated no more than moderate symptoms or moderate challenges with regard to social interaction.  (*See* Dkt. 10-1 at 14-15).  In considering GAF measurements, courts in this Circuit have held that although a GAF can be used as a treatment tool, it is not a measure of disability.  *See, e.g.*, *Thomas v. Soc. Sec. Admin.*, 479 F. Supp. 3d 66, 77 n.3 (S.D.N.Y. 2020).  The ALJ reasoned similarly that the GAF provides

at best a limited evidentiary picture from which to draw conclusions regarding Plaintiff's disability, and Plaintiff's treatment records were more probative.  (*See* Dkt. 7 at 28). Accordingly, the Court does not find that the ALJ erred in considering the GAF score.

In February 2020, Plaintiff underwent treatment with FNP Zakharcshishin.  (*Id.* at 1000).  In her treating source opinion, FNP Zakharcshishin stated that the stress from employment "would warrant increased depression and possibly self harm."  (*Id.* at 28, 955). FNP Zakharcshishin also noted that Plaintiff was engaging in therapy and taking medication but was not at her goal.  (*Id.* at 951).  The ALJ found FNP Zakharcshishin's opinion unsupported by the objective medical evidence, and noted that it was inconsistent with Plaintiff's statements during treatment.  (*Id.* at 24, 1000).  The ALJ further considered that, aside from exhibiting depressed mood and affect, delayed speech, and slowed and withdrawn behavior, Plaintiff's psychological examination was normal.  (*Id.* at 28, 1001).

LMFT Girard opined in June of 2020 that Plaintiff did not have the mental abilities to do most aspects of unskilled work.  (*Id*. at 970-71).  The ALJ found this opinion minimally persuasive, for essentially the same reasons he rejected the opinions of NP Rosette and FNP Zakharcshishin—namely, that it was unsupported by Plaintiff's treatment records, including her varied daily activities, her own reports that therapy was effective, and her largely normal psychiatric examinations.

Plaintiff argues that FNP Zakharcshishin's opinion from February 2020 is consistent with the findings of LMFT Girard and NP Rosette, and that the ALJ accordingly should have credited the conclusions of these providers.  (Dkt. 8-1 at 24-25).  However, the ALJ "is entitled to weigh all of the evidence available to make an RFC finding that [is] consistent

with the record as a whole[,]" *Matta*, 508 F. App'x at 56; *see also Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  The Court finds that the ALJ's reasoning was sound,  that he provided a sufficient explanation for his findings regarding the persuasiveness of the medical opinion evidence, and his findings are consistent with the record as a whole.

In addition, Plaintiff argues that the ALJ failed to build a "logical bridge" between his findings that certain medical opinions were less persuasive and his RFC analysis, frustrating the Court's ability to meaningfully review his determination.  (Dkt. 8-1 at 18, 19-20 (quoting *Pamela P. v. Saul*, 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020)).  Specifically, Plaintiff argues that the ALJ has not explained how he "accounted for more restrictive limitations found by written consultants, such as brief and superficial social contact and other limitations in basic mental demands." (*Id.* at 19).  These arguments are without merit.

"An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the Court] to glean the rationale of an ALJ's decision." *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013).  In other words, although an RFC need not track any medical opinion, "[i]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Raymond v. Comm'r of Soc. Sec*., 357 F. Supp. 3d 232, 237 (W.D.N.Y. 2019) (citation omitted) (second and third alterations in original).  As discussed above, it is clear from the ALJ's opinion the evidence on which the ALJ relied in making

the RFC determination--namely, the opinions of the state agency psychologists—and the ALJ has thus provided an adequate logical bridge to permit the Court to review the agency decision.

Furthermore, it is clear from the record that the ALJ assessed the limitation that Plaintiff engage in "no more than occasional interaction with the general public, coworkers or supervisors" in order to accommodate Plaintiff's agoraphobia by limiting her exposure to individuals, thereby mitigating symptoms associate with this condition and the stress resulting therefrom. *See Annarino v. Comm'r of Soc. Sec.*, 18-CV-130-JWF, 2019 WL 4643604, at *2-3 (W.D.N.Y. Sept. 24, 2019) (finding "occasional interaction with co-workers" and "incidental contact with the general public" assessed in RFC "adequately account for" limitations resulting from a plaintiff's agoraphobia). Moreover, "[a]n RFC assessment 'is the most [a plaintiff] can still do despite [her] limitations.'" *Cooks-Sanders v. Saul*, No. 19-CV-264-MJR, 2020 WL 3046183, at *3 (W.D.N.Y. June 8, 2020) (citing 20 C.F.R. § 404.1545). Plaintiff does not identify what more restrictive limitations the ALJ purportedly failed to consider, and the limitation assessed in the RFC finding addresses Plaintiff's medically determinable impairment and is supported by substantial evidence.

As noted above, Plaintiff also argues that the ALJ relied on "stale[,] incomplete" medical opinions. (Dkt. 8-1 at 18). Plaintiff argues that the medical opinion evidence on which the ALJ relied was incomplete because it contradicted other evidence of record and did not consider later opinion evidence from Plaintiff's providers or evidence of Plaintiff's self-harm attempts. (*See id.* at 21). "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an

ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016). "[A] medical opinion may be stale if subsequent treatment notes indicate a claimant's condition has deteriorated." *Whitehurst v. Berryhill*, 1:16-cv-01005-MAT, 2018 WL 3868721, *4 (W.D.N.Y. Aug. 14, 2018). However, a medical opinion "is not stale simply because time has passed, in the absence of evidence of a meaningful chan[ge] in the claimant's condition." *Cruz v. Comm'r of Soc. Sec.*, No. 1:16-CV-00965(MAT), 2018 WL 3628253, *6 (W.D.N.Y. July 31, 2018). Here, Plaintiff does not argue that any of her conditions deteriorated following the state agency psychologists' issuance of their opinions, nor is any such deterioration apparent from the record. (*See* Dkt. 8-1 at 18-27). Instead, as the ALJ noted in the hearing decision, Plaintiff reported in March 2020 that therapy was effective. (Dkt. 7 at 24, 1000). Based in part on this statement, the ALJ concluded that Plaintiff's condition was improving, and together with the findings of the state agency psychologists among other evidence, he concluded that Plaintiff was not disabled within the meaning of the Act. (*See id.* at 24, 31). The Court finds that this determination is supported by substantial evidence, and remand is not warranted.

### B.    The ALJ did not Misconstrue Evidence of Record

Plaintiff argues that the ALJ failed to account for the "limiting effects" from Plaintiff's "combined conditions[.]" (Dkt. 8-1 at 28-30). However, Plaintiff does not provide legal or factual support for this position. Rather, Plaintiff subsequently contends that the ALJ misconstrued the evidence of record in his RFC determination. (*See id.* at 29). In particular, Plaintiff contends that her symptoms were "episodic," and the ALJ gave improper weight to Plaintiff's ability to conduct daily activities such as leaving her home,

traveling out of town, and attempting to work. (*Id.* at 28-29). Plaintiff argues that because her symptoms were episodic, her ability to conduct daily activities was not "*sustained* for periods comparable for competitive work" and the ALJ did not explain why he did not credit Plaintiff's testimony that she was unable to engage in such activities where the evidence cited involves only short-term activities. (*Id.* at 29-30 (emphasis in original and citing *Merritt v. Comm'r of Soc. Sec.*, 15-CV-6633-CJS, 2016 WL 6246436, at *8 (W.D.N.Y. Oct. 26, 2016) (holding that ALJ should have considered medical opinion in treatment note)).

As a preliminary matter, it is not clear to the Court what evidence, if any, Plaintiff relies on to assert that any conditions that affect her are episodic. In addition, the authority cited does not appear to stand for the proposition that the ALJ must explicitly account for the episodic nature of any symptoms in the RFC. *See Merritt*, 2016 WL 6246436, at *8. The lack of clarity in Plaintiff's arguments makes it difficult to discern the precise error she is contending the ALJ committed.

In any event, the ALJ's consideration of Plaintiff's daily activities was proper. Defendant concedes that "the capability to perform activities of daily living is not inherently inconsistent with a finding of disability[.]" (Dkt. 10-1 at 19). However, "[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility determination." (*Id.* (quoting *Cahill v. Astrue*, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012)). Indeed, the applicable regulations provide that the ALJ may consider "daily activities" for the purpose of evaluating a plaintiff's symptoms and their intensity. *See* 20 C.F.R. § 416.929(c)(3)(i).

- 13 -

Fundamentally, Plaintiff does not present facts or authority sufficiently supporting the argument that the ALJ misconstrued facts in the record. *Cf. Wilson v. Colvin*, 213 F. Supp. 3d 478, 489-91 (W.D.N.Y. 2016) (discounting ALJ's credibility determination in light of numerous factual inaccuracies in ALJ decision). Rather, Plaintiff adopts a selective reading of the ALJ's decision regarding consideration of Plaintiff's activities and requests that the Court reassess the credibility that the ALJ afforded to her, which is not the Court's function in reviewing the Commissioner's final determination. *See Holscher v. Saul*, No. 19-CV-510F, 2020 WL 5628936, at *4 (W.D.N.Y. Sept. 21, 2020) ("It is the function of the ALJ, not the court, to assess the credibility of witnesses." (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x. 29, 35 (2d Cir. 2013)). "Because the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, his decision to discredit subjective testimony is entitled to deference and may not be disturbed on review if his disability determination is supported by substantial evidence." *Simmons v. Comm'r of Soc. Sec.*, 2020 WL 4597316, at *5 (W.D.N.Y. Aug. 10, 2020) (quotation marks and citation omitted). In addition, the ALJ "is not require[d] to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). The Court finds no abuse of that discretion here.

The ALJ considered Plaintiff's activities, including her air travel to New York for the purpose of a vacation, and move from Arizona to New York, and concluded therefrom only that Plaintiff "functions at a higher level physically and psychologically than alleged."

(Dkt. 7 at 27).  Considering activities such as travel when determining the "nature, intensity, persistence, and limiting effects of [Plaintiff's] symptoms" is appropriate.  *See Wasserman v. Kijakazi*, 20-cv-3482 (VB) (AEK), 2022 WL 2532181, at *11, *17 (S.D.N.Y. Mar. 17, 2022) (denying plaintiff's motion for judgment on the pleadings where ALJ questions plaintiff's credibility regarding symptoms where plaintiff engaged in travel); *see also Millet v. Berryhill*, 17 Civ. 7295 (PGG)(HBP), 2019 WL 2453344, at *22 (S.D.N.Y. Jan. 11, 2019) (same).  Therefore, the Court sees no basis on which to reject the ALJ's determination.

In sum, the record before the Court does not support the conclusion that the ALJ committed any reversible error in assessing Plaintiff's claim.  Accordingly, neither reversal nor remand is warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment for Defendant and to close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       March 13, 2023
             Rochester, New York